IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 28, 2012

**STATE OF TENNESSEE v. KIMBERLY JOHNSON**

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S58580     R. Jerry Beck, Judge**

_____

**No. E2011-02257-CCA-R3-CD - Filed June 27, 2012**

_____

The Defendant-Appellant, Kimberly Johnson, was charged by presentment with three counts of the sale of a Schedule II controlled substance and three counts of the delivery of a Schedule II controlled substance. Johnson subsequently entered guilty pleas to the charges in the Sullivan County Circuit Court. Pursuant to the terms of her plea agreement, Johnson was sentenced as a Range I, standard offender, she was required to pay a $6,000 fine, and her delivery convictions were merged with her sale convictions for an effective sentence of four years, with the manner of service of the sentence to be determined by the trial court. At the sentencing hearing, the trial court denied all forms of alternative sentencing and imposed a sentence of confinement in the Tennessee Department of Correction. On appeal, Johnson argues that the trial court erred in denying an alternative sentence. Upon review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Stephen M. Wallace, District Public Defender; Andrew J. Gibbons, Assistant Public Defender, Blountville, Tennessee, for the Defendant-Appellant, Kimberly Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; Barry P. Staubus, District Attorney General; and James F. Goodwin, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Plea Submission Hearing.** Prior to Johnson entering her guilty pleas, the State and the defense agreed that a written stipulation of facts supporting Johnson's guilty pleas would

be entered into evidence. This stipulation stated that Johnson sold Oxycodone pills to a confidential informant while under the surveillance of police officers on August 27, 2009, September 24, 2009, and January 8, 2010. Three lab reports from the Tennessee Bureau of Investigation, which were also entered into evidence, showed that the blue tablets Johnson sold to the confidential information were, in fact, Oxycodone. After the trial court advised Johnson of her rights, she entered her guilty pleas to the aforementioned offenses.

**Sentencing Hearing.** At the October 13, 2011 sentencing hearing, the State entered the presentence report into evidence. In addition, three letters written on Johnson's behalf were also admitted as exhibits.

After reviewing the presentence report, the trial court noted that Johnson was fifty-one years old and had the following criminal record:

| Conviction | Age at time of conviction | Sentence |
|---|---|---|
| Possession of Marijuana | 38 | 11 months, 29 days, suspended after serving 2 days in jail |
| Violation of the Habitual Motor Vehicle Offender Act | 37 | 1 year, suspended after serving 20 days in jail, balance of sentence served in a Community Corrections program |
| Two Convictions for the Sale of a Schedule IV Drug | 36 | Concurrent Sentences of 4 years, suspended after serving 90 days in jail |
| Assault | 32 | 11 months, 29 days, suspended (from presentence report) |
| Illegal Massage | 31 | 11 months, 29 days, suspended (concurrent with DUI sentence) |
| Soliciting Prostitution | 31 | 6 months suspended after serving 30 days in jail (consecutive to DUI sentence) |

| | | |
|---|---|---|
| Driving Under the Influence of an Intoxicant | 31 | 11 months, 29 days, suspended after serving 120 days in jail |
| Driving on a Revoked License | 31 | 6 months, suspended |
| Public Intoxication | 30 | 30 days, suspended |
| Driving Under the Influence of an Intoxicant | 30 | 11 months, 29 days, suspended to probation after serving 48 hours in jail |

The trial court also noted that Johnson had previously received alternative sentences for some of her convictions. The court stated that on August 15, 1997, Johnson had been granted a probationary sentence for the violation of the habitual motor vehicle offender act, and on October 14, 1997, Johnson had violated her probation because she tested positive for marijuana during a drug screen, which resulted in the revocation of her probation. Johnson was granted probation a second time for her two convictions for the sale of a Schedule IV drug, and this probation was revoked when she tested positive for cocaine during a drug screen. This probation was reinstated and revoked a second time when Johnson absconded.

The trial court reviewed Johnson's educational background and determined that she had dropped out of high school her sophomore year because she ran away from her "stepfather from hell[,]" who she claimed physically and mentally abused her. The court noted that she later obtained her GED. In 1997, Johnson earned a degree in general education from East Tennessee State University, which was verified. At the time of the sentencing hearing, Johnson was enrolled at "Northeast State" community college and had earned a 4.0 grade point average the previous semester, which the court determined was a "favorable factor." The court also noted that Johnson hoped to complete a two-year degree in criminal justice. Johnson also disclosed that she had already earned a two-year degree in business management, although no proof of this degree was provided to the investigating officer.

In the presentence report, Johnson disclosed that she suffered from chronic obstructive pulmonary disease and degenerative disk disease, although she denied seeking treatment or taking any prescriptions for these conditions. She also disclosed that the last time she had been seen by a physician was in 2009 when her doctor prescribed her Hydrocodone, Clonazepam, and Carisoprodol for back pain associated with her 1990 car accident, which caused her to be in a coma for three weeks. She acknowledged that she was ultimately convicted for driving under the influence of an intoxicant in conjunction with this car

accident.

The court observed that Johnson described her mental health as "fair." Johnson disclosed that she suffered from manic depression and obsessive compulsive disorder. She was also treated for bipolar disorder in 1999, for which she was prescribed Klonopin, Tegretol, and Doxepin, and was treated by a psychiatrist. Johnson reported that she stopped going to psychiatric treatment and stopped taking her medication in 2005. The trial court determined that it would not hold Johnson's mental conditions against her because those were akin to "being sick." The court found that it was "[f]avorable [that] she sought treatment."

The trial court then reviewed Johnson's history of drug and alcohol addiction. It noted that Johnson first began drinking alcohol at age fifteen because of the abuse she suffered but stopped drinking in 1994. In addition, the court noted that Johnson first smoked marijuana at age sixteen as "an escape mechanism." Johnson asserted in the presentence report that it had been at least two years since she had last smoked marijuana. The court also noted that Johnson first used cocaine at age twenty-five and had been "shooting the cocaine intravenously on a daily basis for five years." Johnson reported that she used cocaine for the last time in 1999. Johnson also disclosed that she abused Lortab, which had been prescribed to her by a pain management physician and that she took three to five Roxicet pills per day until 2010. She reported that in August 2010, she went to a rehabilitation program for opiate dependency "through Recovery Associates," where she received one prescription for Suboxone, which lessened her withdrawal symptoms. This single prescription for Suboxone was verified by the investigating officer.

The trial court also reviewed Johnson's employment history, which it determined was "a favorable factor." Johnson was currently employed at a temporary agency but had worked at two different restaurants as a dishwasher earning minimum wage in 2010. She had also worked as a cook at an Olive Garden restaurant from 1999-2009, where she earned $12.40 an hour. Johnson received an honorable discharge from the United States Army in 1985, which the court stated was a "favorable factor."

After reviewing the contents of the presentence report, the court said, "I've made a cursory review [of this report], so [that will] be adopted and included in my final finding[s]." The court reminded Johnson that she had the burden of establishing her suitability for probation.

Johnson presented letters from two community college faculty members and one employer who emphasized her excellent work ethic and her capacity to overcome life's obstacles. The trial court said that it had considered these letters and determined that they were "favorable."

Johnson testified in her own behalf at the sentencing hearing. She stated that she was currently attending Northeast State Community College and was halfway through the fall semester. She said she had earned a 4.0 grade point average for the preceding semester and was planning on graduating the following year. Johnson said she had previously received an Associate's degree in business management and had already contacted another college about finishing her four-year degree in business management after completing her spring semester. She said she hoped to attend law school.

Johnson did not dispute any of the prior convictions noted by the trial court but asserted that the most recent conviction was from 1999. She admitted that she had previously been placed on probation eight different times and had violated her probation at least two times. She also admitted that she had a history of substance abuse which had "led to one problem after another[.]" However, Johnson said that she had undergone rehabilitative treatment at the Suboxone Clinic and had gotten "cleaned up." Johnson asserted that she had "been clean over a year now."

Johnson informed the court that she would reside with a lifelong friend if she were granted probation in this case. She also said she would abide by the terms of probation. Johnson said that she had been successful in turning her life around since her convictions in the 1980's and 1990's.

Johnson also discussed the series of events that ultimately led to her convictions in this case. She said she quit her job at the Olive Garden restaurant, which was her "first mistake[,]" given that she had worked there for ten years, had seniority, had a 401K, and had paid vacation time. She said she initially worked at the Olive Garden to earn money to regain her driver's license after being convicted of violating the habitual motor vehicle offender act. She said she was without a driver's license for thirteen years until she was able to pay off all the fines associated with this conviction.

Johnson admitted that she sold the drugs in this case to support her drug habit. She said that a physician at a pain clinic had been prescribing Oxycodone to her and that she had been using some of the pills and had been selling some of the pills. She further admitted that she obtained marijuana from individuals she knew through college. However, she claimed that she no longer used drugs.

Johnson made the following statement to the court: "I'm very sorry for what I did. I'm not sorry because I got caught, I'm sorry because I broke the law[,] and I was wrong." She also stated that she had not been "raised to be like this, but this was how [she] ended up." She added, "[I]t's just something I have to deal with and I have to watch every day of my life." Defense counsel informed the court that Johnson had several people present in the courtroom to support her.

-5-

In making its sentencing determination, the court said it considered the evidence, the statements of counsel, and all of the documents submitted to court. The court also considered the "favorable factors[,]" which included Johnson's prior military service, her consistent employment history, and her educational history and pursuits. Although the trial court did not apply any enhancement factors, it did apply the mitigating factor that Johnson's "criminal conduct neither caused nor threatened serious bodily injury[.]" T.C.A. § 40-35-113(1) (2006). The court also considered the unfavorable factors in this case, including Johnson's "numerous prior convictions" for both felony and misdemeanor offenses and the fact that Johnson "ha[d] continued to violate the law for a long period of time." Although the trial court noted that a substantial period of time had passed between Johnson's last conviction in 1999 and the offenses in this case, it stated Johnson "was a longtime seller of drugs, [which] support[ed] a longtime [drug] habit." The court noted that it came down "to weighing the favorable factors against the unfavorable factors." Ultimately, the court determined that the "unfavorable factors outweigh[ed] the favorable factors" and denied all forms of alternative sentencing, thereby ordering Johnson to serve her effective four-year sentence in the Tennessee Department of Correction. Johnson filed a timely notice of appeal.

## ANALYSIS

Johnson argues that the trial court abused its discretion in denying her an alternative sentence. See Mattino v. State, 539 S.W.2d 824, 828-29 (Tenn. Crim. App. 1976) (concluding that the trial court abused its discretion in denying probation "based on the nature of the offense and the . . . plea reduction" where all the other factors clearly favored a probationary sentence). She contends that a sentence of full probation is appropriate in her case. Although she acknowledges that she has a history of criminal conduct, she argues that confinement is not necessary to protect society. She also contends that confinement is not necessary to avoid depreciating the offense because she entered guilty pleas to three non-violent Class C felonies with concurrent sentences. Moreover, Johnson argues that she has a strong work history, has returned to college, has received excellent grades, and has successfully completed rehabilitative treatment for her substance abuse problems. She asserts that the trial court failed to consider her accomplishments in the areas of rehabilitation and education, "the negative effect incarceration would have on the appellant's continued progress", and the issue of prison overcrowding before denying an alternative sentence. Finally, she argues the trial court made no specific findings of fact beyond mentioning her prior convictions, stating that she was a "longtime seller of drugs[,]" and determining that the unfavorable factors outweighed the favorable factors in her case.

In response, the State contends that the trial court properly sentenced Johnson to confinement after considering all of the proof at the sentencing hearing and finding that the unfavorable factors outweighed the favorable factors. Upon review, we conclude that the trial court's imposition of total confinement was proper.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court "may not disturb the sentence even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, in a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008) (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). In this case, our review will be de novo without a presumption of correctness because the trial court failed to affirmatively show in the record its consideration of the sentencing principles and failed to apply the factors in Tennessee Code Annotated section 40-35-103(1)(A)-(C) (2006).

A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); see also Carter, 254 S.W.3d at 343; State v. Hayes, 337 S.W.3d 235, 264 (Tenn. Crim. App. 2010). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5) (2006). The defendant has the burden of showing the impropriety of the sentence. Id. § 40-35-401(d), Sentencing Comm'n Comments.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006). Because Johnson entered guilty pleas to six Class C felonies as a Range I, standard offender, she was considered a favorable candidate for alternative sentencing. A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Tennessee Code Annotated section 40-35-102(5) (2006) provides guidance to courts regarding the types of defendants who should be required to serve their sentences in confinement:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable

candidate for alternative sentencing. Id. (citing T.C.A. § 40-35-303(b)).

Johnson was also eligible for probation because her sentences were ten years or less and the offenses for which she was sentenced were not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2006). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

We conclude that the trial court properly imposed a sentence of full confinement in this case, despite the fact that the trial court failed to affirmatively show in the record its consideration of the sentencing principles and failed to apply the factors in Tennessee Code Annotated section 40-35-103(1)(A)-(C). Johnson's criminal record, which included two convictions for the sale of a Schedule IV drug, two convictions for driving under the influence of an intoxicant, and convictions for possession of marijuana, violating the habitual motor vehicle offender act, assault, illegal massage, soliciting prostitution, driving on a revoked license, and public intoxication, constituted "a long history of criminal conduct" necessitating confinement pursuant to code section 40-35-103(1)(A). Moreover, because Johnson had previously received a sentence of probation eight times and had violated her probation at least two times, the record shows that "[m]easures less restrictive than confinement ha[d] frequently or recently been applied unsuccessfully" to her pursuant to

code section 40-35-103(1)(B). Although Johnson was considered a favorable candidate for an alternative sentence and was eligible for probation, the aforementioned factors constitute "evidence to the contrary" indicating that she should not receive alternative sentencing. Accordingly, we affirm the trial court's judgments.

## **CONCLUSION**

The trial court's denial of alternative sentencing in this case was proper. Upon review, we affirm the trial court's judgments.

_____
CAMILLE R. McMULLEN, JUDGE